UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIANA LITTLE,

    Plaintiff,

v.                                                  Case No. 1:09-cv-908
                                                Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
    _____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Supplemental Security Income (SSI).

Plaintiff was born on November 5, 1955 (AR 73).[1] She obtained a GED and attended one year of college (AR 112). Plaintiff alleged a disability onset date of March 31, 1999 (AR 73). She had previous employment as an assembler and machine operator/inspector (AR 141-48, 644). Plaintiff identified her disabling conditions as problems with breathing and blood circulation, nerve damage in hands and back, pain in the breast and under arms, rheumatoid arthritis, a pulmonary embolism, three hand surgeries and severe depression (AR 166, 631, 633-4, 662-64).

Plaintiff's claim has a lengthy history, as recounted in the December 11, 2008 decision of Administrative Law Judge (ALJ) Reamon:

---

[1] Citations to the administrative record will be referenced as (AR "page #").

> Claimant filed applications for Supplemental Security Income in 1997 and 1999. The claims were denied at the initial level and no appeals were filed. She filed an application for Supplemental Security Income in 2001 and the claim was medically allowed based on Listing 14.09A for inflammatory arthritis. The application was later denied based on excess income.
>
> The application that is currently being considered was filed on May 20, 2004. Claimant alleges disability onset of March 31, 1999. The claim was initially denied and claimant requested a hearing. On July 26, 2005, the Administrative Law Judge denied her request for Title XVI payments based on hearing evidence that she could perform "other" work within a reduced range of light exertion. Claimant did not agree with the hearing decision and filed an appeal but the Appeals Council found no reason to remand the case. However, The United States District Court remanded the case pursuant to sentence four for further proceedings.[2]
>
> In compliance with the remand order, a hearing was held on October 1, 2007, and a decision was rendered on December 19, 2007.[3] The claim was again denied based on similar evidence. Claimant did not agree with the hearing decision and filed an appeal. On July 9, 2008, the Appeals Council remanded the case based on faulty hypothetical hearing testimony. The remand order directed the court [sic] to obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on claimant's occupational based with specific capacity and limitations established by the record as a whole, assign a different judge, offer claimant a new hearing, take any further action required to complete the record, and issue a new decision.
>
> Claimant appeared and testified at a hearing held on September 3, 2008, in Grand Rapids, Michigan. James Lozer, an impartial vocational expert, also appeared at the hearing. Claimant is represented by Thomas A. Geelhoed, an attorney.

(AR 400) (citations omitted) (footnote added). After performing a *de novo* review, ALJ Reamon found that plaintiff was not under a disability as defined in the Social Security Act at any time since filing her application for SSI on May 20, 2004 (AR 409-10).

---

[2] *See Little v. Commissioner*, No. 1:06-cv-455 (docket nos. 12 and 13) (ALJ's decision reversed and remanded pursuant to the parties' stipulation that the matter be remanded to obtain supplemental testimony from a vocational expert regarding the number of jobs a hypothetical individual could perform given plaintiff's age, education, work experience and appropriate residual functional capacity as established by the medical evidence of record and the ALJ's findings).

[3] The December 19, 2007 decision was entered by ALJ Prothro.

The parties agree that plaintiff's husband was awarded Social Security Disability benefits in August 2007 and that plaintiff's eligibility for SSI benefits ended with this award. *See* Plaintiff's Brief at p. 3; Defendant's Brief at pp. 1-2, fn. 2. The parties further agree that the relevant time period for plaintiff's SSI claim was from June 2004 through August 2007. *Id.* Accordingly, the court's review is limited to that time period.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not

4

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her SSI application date of May 20, 2004 (AR 403). At step two, the ALJ found that plaintiff suffered from severe impairments of: arthritis; carpal tunnel syndrome bilaterally; and depression (AR 403). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 403-05). The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to lift and carry 20 pounds occasionally and 10 pounds frequently; sit for six hours during an eight-hour workday; combine standing/walking to reach six hours during an eight-hour workday; no climbing of ladders, ropes, and scaffolds; and occasionally climb ramps and stairs; use either upper extremity to reach overhead occasionally; and bilaterally hand/finger occasionally. Claimant is limited to simple, routine tasks and minimal contact with general public (20 CFR 416.967(b)).

(AR 405). The ALJ further found that plaintiff had no past relevant work (AR 408).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of jobs in the national economy (AR 409). Specifically, plaintiff could perform 7,500 light, unskilled jobs in the regional economy including: inspector (1,500 jobs); custodian (3,000 jobs);

and security guard (3,000 jobs) (AR 409). Accordingly, the ALJ determined that plaintiff had not been disabled under the Social Security Act since May 20, 2004, the date plaintiff's application was filed (AR 409).

### III. ANALYSIS

Plaintiff has set forth one issue for review:

**The treating psychiatrist provided a statement of marked work limitations. The Vocational Expert testified that these limitations excluded all jobs. The ALJ disregarded this statement in violation of Social Security law. This error authorizes a remand for award of benefits.**

#### A. Background

The ALJ's opinion is based upon the mental RFC assessment (Form SSA-4734-F4-SUP or "Form 4734") prepared by a non-examining agency physician, R. Newhouse, M.D. in August 2004 (AR 261-63, 438-39). Plaintiff's alleged errors are based upon some of the ratings given by Dr. Newhouse in Section I ("Summary Conclusions") of the RFC assessment. The "summary conclusions" section of Form 4734 rates 20 areas of mental functioning. For each area of mental functioning, the agency physician evaluates the claimant as either "not significantly limited," "moderately limited," markedly limited," "no evidence of limitation in this category," or "no ratable based on available evidence" (AR 264). *See* Policy Operations Manual (POMS), § DI 24510.060(B)(2)(c).

In challenging the ALJ's decision, plaintiff relies on certain opinions expressed by her psychiatrist, Sohail Ahmad, M.D., the medical director of West Michigan Community Mental Health System "(Community Mental Health"), in his statement of March 23, 2005 (AR 306-14). Plaintiff began treating at Community Mental Health in April 2004 with a psychotherapist, Katie

6

Schoenherr, MSW, CSW (AR 306-07). The doctor first saw her on November 3, 2004 (AR 306-7). Later that month, the doctor diagnosed plaintiff as suffering from "major depression, recurrent with mild psychotic features"and determined that her functioning was "just beyond marginal" (AR 308).

### B. The ALJ's review of Dr. Ahmad's opinions

ALJ Reamon evaluated Dr. Ahmad's opinions as follows:

> On March 23, 2005, Dr. Ahmad indicated the claimant has marked impairment in her ability to sustain concentration and persistence, maintain attention and concentration for extended periods, work in close proximity to others without being distracted by them, and complete a normal work week or work day without interruption from psychologically based symptoms. Claimant has moderate impairment in her ability to maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine special supervision, and social interaction. The undersigned finds that the December 2007 hearing decision adequately considered each of the areas of functioning and appropriately accepted and/or rejected the opinions as they comport with evidence as a whole (Exhibit 6A/18/19) (20 CFR 416.927(d)(2), and SSR 96-2p). The undersigned also agrees with the rationale regarding Dr. Ahmad's speculative opinion that claimant is unable to maintain regular attendance (Exhibits 15F, 31E).

(AR 407). Because ALJ Reamon's decision relied upon the reasoning as set forth in ALJ Prothro's December 2007 decision, the court will review the earlier decision in detail.

ALJ Prothro's decision gave considerable weight to the opinions expressed by Dr. Newhouse, noting that the doctor assessed plaintiff as "capable of mentally performing simple tasks on a sustained basis which do not involve contact with the general public or large groups, with the latter limitation due to his assessment of a 'marked' degree of limitation with respect to social functioning" (AR 438-39). Then, ALJ Prothro evaluated Dr. Ahmad's opinions as follows:

> The undersigned is less persuaded by the opinion offered in March 2005 (subsequent to Dr. Newhouse's review of the record), by S. Ahmad, M.D., the claimant's treating psychiatrist at West Michigan Community Mental Health since the previous November, but such has been accorded partial weight. Dr. Ahmad stated that he assessed the claimant to have a marked limitation of her ability to remember detailed tasks but "would do well" with short instructions, assessing a

7

moderate limitation in this regard. He then assessed the claimant to have a marked limitation of her ability to carry out, or sustain concentration in order to complete, short instructions. He stated that he based this assessment on having observed the claimant's difficulty maintaining focus whenever the "structure" of their sessions is decreased, specifically stating that "as long as we keep things very organized, she is okay." This appears to be a contradiction; if the claimant's ability to carry out short instructions is rated as "okay" as long as she is within a "very organized, structured" setting, the undersigned finds it reasonable to conclude that her overall ability in this regard is not "markedly" limited. Therefore, with the claimant having no more than a moderate limitation of her ability to remember and carry out short or simple instructions, the undersigned finds that such an assessment is not inconsistent with the ability to perform simple tasks on a sustained basis, as was the assessment of Dr. Newhouse.

Dr. Ahmad also assessed the claimant to have marked limitations of her abilities to maintain attention/concentration for extended periods, work in coordination or proximity to others without being distracted, and complete a normal workday/week without interruptions from psychological symptoms, opining that he believed she would likely be absent from work "more than 50% percent [sic] at the very least." The undersigned simply cannot consider Dr. Ahmad's statement regarding a 50 % percent [sic] absenteeism rate to be more than speculation. There is no indication within Dr. Ahmad's treatment notes that the claimant frequently failed to show for her appointments during the five month period of time he monitored her emotional symptoms, nor is frequent failure to show for appointments documented within the treatment notes from Dr. Goodman, her former treating physician, or Dr. Murphy, her current treating physician.

Again, no significant deficit of the claimant's overall ability to maintain attention/concentration is documented. There is no indication within the reports of Dr. Tava, the consulting psychologist who formally evaluated the claimant in December 2001 and July 2004, that she was grossly tangential or exhibited significant difficulty maintaining focus during the evaluations. She was also fully capable of maintaining concentration at her administrative hearings before the undersigned in March 2005 and October 2007. She related to Dr. Tava in July 2004 that she spent a considerable amount of her time on the telephone "taking care of other people's problems" as well as spending several hours most nights maintaining a journal; both activities are clearly reflective of an ability to maintain attention/concentration for extended periods of time.

Dr. Ahmad next indicated that he assessed the claimant to have a moderate limitation of her ability to interact with peers and the general public and a marked limitation of her ability to interact with supervisors. Again, while the record consistently indicates that the claimant has presented for mental health evaluations with notable anger or irritability evident, all documented evaluations have also

8

> consistently indicated that she, nevertheless, has been able to consistently cooperate with treatment providers. This leaves the undersigned to conclude that she is capable of maintaining appropriately acceptable social interaction with supervisors. The undersigned finds the record clearly sufficient to establish that, overall, the claimant has a marked limitation of her ability to maintain social functioning, and this limitation has been incorporated into the residual functional capacity determination of this decision by restricting the claimant to work activity that does not require more than minimal contact with the general public.

(AR 439-40).

### G. Discussion

Plaintiff contends that the ALJ erred by failing to give controlling weight to Dr. Ahmad's opinions and failing to use those opinions to elicit evidence from the vocational expert (VE) at step five of the sequential evaluation.

#### 1. Legal standards

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"). Because the purpose of the hypothetical question is to elicit testimony regarding a claimant's ability to perform other substantial gainful activity that exists in the

national economy, the question does not need to include a listing of the claimant's medical diagnoses. "[A] hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb*, 368 F.3d at 632.

Here, the ALJ did not accept the opinions expressed by plaintiff's treating psychiatrist, Dr. Ahmad, as accurately portraying her mental limitations. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

2.     **The mental RFC assessment**

Through the introduction of Dr. Ahmad's testimony, plaintiff attempted to present a mental RFC assessment based upon some of the considerations as set forth in Form 4734. While Dr. Ahmad reviewed some of the summary conclusions in Section I of the form, he did not translate those conclusions into a narrative RFC assessment as contemplated by Section III of the form. These two sections serve separate functions. "**Section I is merely a worksheet** to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment**." POMS § DI 24510.060(B)(2)(a) (emphasis is original).[4] The actual RFC assessment appears in a narrative format in Section III of the form. POMS § DI 24510.060(B)(4).[5] *See, e.g., Johansen v. Barnhart*, 314 F.3d 283, 288 (7th Cir. 2002) ("worksheet observations" made by DDS physician that claimant was "moderately limited" in three areas of mental functioning, but "not significantly limited" in the other 17 areas of functioning translated into a mental RFC that the claimant "could perform repetitive, low stress work").

Dr. Newhouse provided the following RFC assessment in Section III of the form:

> Dysthymia with the expectation that things have never gone right and never will but has not required hospitalization nor has it significantly limited her ADL

---

[4] "[T]he POMS is a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims. *Davis v. Secretary of Health and Human Services*, 867 F.2d 336, 340 (6th Cir. 1989). While the POMS "does not have the force and effect of law, it is nevertheless persuasive." *Id.*

[5] The form's instructions provide that Section III should be completed as follows:

> Record in this section the elaborations on the preceding capacities. Complete this section ONLY after the SUMMARY CONCLUSIONS section has been completed. Explain your summary conclusions in narrative form. Include any information which clarifies limitation or function. Be especially careful to explain conclusions that differ from those of treating medical sources or from the individual's allegations.

(AR 253).

> [activities of daily living]. Borderline personality has caused most of her problems getting along with others. She would have difficulty doing tasks for the general public or in large groups. She tends to blame others for everything. May be uncomfortable in large groups and function best in small familiar groups. Retains ability to do simple tasks on a sustained basis.

(AR 263).

Unlike Dr. Newhouse, Dr. Ahmad neither addressed all 20 of the categories in the mental RFC assessment nor provided a narrative translating his summary conclusions into a mental RFC. Dr. Ahmad gave only a few opinions which specifically addressed plaintiff's functional capacity, e.g.: plaintiff would miss work 15 out of 30 days per month due to her psychological problems; plaintiff was moderately impaired in dealing with the general public; plaintiff's serious problems with supervisors "would be of great danger for her and the supervisor;" and that while plaintiff's symptoms had been more controllable in the past couple of months, "the ability to maintain that controllability is still much less than adequate" (AR 311-13). In short, Dr. Ahman did not complete a Form 4734 or provide a competing mental RFC assessment for the ALJ to review.

### 3. The work preclusive limitations

In the absence of a complete mental RFC assessment as contemplated by Form 4734, plaintiff chose four areas of functioning (from the summary conclusions in Section I) which Dr. Ahmad identified as being markedly impaired: the inability to follow any instructions; the inability to work in proximity to others without distraction; the inability to work under a supervisor due to her "paranoid base;" and, the ability to work only 50% of the time.

#### a. Plaintiff's ability to follow instructions

Dr. Newhouse found that plaintiff's ability to understand and remember detailed instructions was moderately limited. Dr. Ahmad found greater limitations:

> I think [plaintiff] certainly has marked impairments in remembering detailed instructions. Short instructions I think she would do well, but still I think she would have some impairment. And if there is a rating scale, I would put it in the moderate range. . . .
>
> Short term, severe in the marked range.

(AR 309). The doctor continued:

> [I]n the sessions, as long as we keep things very organized she is okay, but as soon as I decrease the structure she begins to have difficulty maintaining focus and be able to [sic], even in our one-to-one contact, produce history and personal data that would be very easy to anybody to produce. I have not seen her actually in a working environment, but if she has this much difficulty with me when we meet in a very structured environment, I certainly cannot see her functioning in a public situation with all the problems that go on other than an impaired range [sic].

(AR 309-10). Dr. Ahmad felt that plaintiff had at least a moderate impairment in these areas, if not a marked impairment "for both short and long term functions" (AR 310).

### b. The ability to work with others and under supervisors

Dr. Newhouse determined that plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or proximity to others without being distracted by them; and the ability to complete a normal workday without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (AR 261-62). Dr. Newhouse also found that plaintiff's social interaction was moderately limited in the following categories: the ability to interact appropriately with the public; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and the ability to maintain socially appropriate behavior (AR 262-63).

Dr. Ahmad felt that plaintiff would be at least moderately impaired in the areas of maintaining regular attendance, being punctual within customary tolerances, and maintaining an ordinary routine without special supervision (AR 310, 312). In addition, Dr. Ahmad opined that plaintiff had a marked impairment in the ability to work in coordination or proximity to others without being distracted by them (AR 310). The doctor provided the following explanation:

> She has a paranoid process that intrudes into her thinking very often. She does not feel comfortable in any public situation and we've seen it in our waiting room when she comes here, she does not look very settled. She has a tendency to be away from the waiting room until it is time for her to see me or her other counselor here. She does have what is known as ideas of reference, which is a term used in psychiatry for people who have a pre-psychotic condition where they feel people are watching them or observing them, talking about them. And that happens in very innocent public situations and a work environment certainly would be one where that process would be very, very much a problem.

(AR 310-11). The doctor stated that with "ideas of reference," the individual thinks that others are referring to them when that is not a fact, with the condition being "one step below a delusion" (AR 311). Dr. Ahmad explained that "[s]ometimes you can reason with the individual" but this occurs after the fact (AR 311).

> [W]hen they are in that situation they will respond as if they are being scrutinized by someone watching them, reporting their movements. So their behavior is controlled by that. And that can happen in any environment. A work environment I think would be even more liable to have that process come up just because of the situation where you have to be monitored and I think that will produce a significant increase of the activity in that process.

(AR 311). In addition, Dr. Ahmad felt that plaintiff had a severe impairment interacting with supervisors due to her "paranoid base," stating "I think that would be of great danger for her and her supervisor" (AR 312).

### c. The ability to work on a sustained basis

Dr. Newhouse found that plaintiff was moderately limited in her ability to complete a normal workday without interruptions from psychologically based symptoms (AR 261-62). For his part, Dr. Ahmad opined that plaintiff had a marked limitation in her ability to complete a normal work week with out interruption from psychologically based symptoms (AR 311-12). The doctor stated that plaintiff's ability to attend work was diminished by both her psychological and medical problems:

> I think she would miss most probably more than 50 percent [of workdays] at the very least. Because not only does she have psychological problems, and as her psychiatrist I can only testify about those, she also has rather severe medical problems and her medical problems keep her from sitting, bending and doing work that's repetitious because of the physical limits that she has.

(AR 311-12). When asked about the psychological aspect, the doctor stated:

> I think more often than not she would miss work. So if you would look at the first case, I would say out of 30 days in a month, she would most probably be missing more than 15 days of the month at any one time.

(AR 312). The doctor noted that plaintiff had been hospitalized on two occasions because of psychosis, because staff members felt that she was becoming a homicidal risk (AR 313). However, Dr. Ahmad gave no dates as to when these hospitalizations occurred.

### d. The VE's testimony

At the administrative hearing, the VE testified that if plaintiff missed up to 50% of her work schedule due to psychological problems, as Dr. Ahmad opined, then this would preclude all work (AR 699-700). Similarly, the VE testified that if plaintiff was markedly impaired in remembering and carrying out short instructions, simple instructions and detailed instructions, as Dr. Ahmad opined, then this would eliminate all work (AR 699). The VE was less clear as to the

15

effect of two other conclusions reached by Dr. Ahmad. The VE testified that a marked impairment in the area of working in proximity to others without being distracted by them would not limit work in and of itself, nor would a "severe impairment" in working with supervision (AR 699-700). However, the VE further stated that the supervision-related limitations discussed by Dr. Ahmad would be work preclusive "if you add them all together" (AR 699-700).

In his decision, ALJ Reamon stated good reasons for according only partial weight to Dr. Ahmad's opinions regarding the alleged work preclusive impairments: plaintiff was capable of following instructions during her sessions with Dr. Ahmad; she was capable of maintaining attention and concentration as evidenced by her evaluation by another psychologist, Dr. Tava, her participation at the administrative hearings, her ability to spend considerable time on the telephone "taking care of other people's problems," and her spending several hours most nights maintaining a journal; while plaintiff had appeared for mental health evaluations "with notable anger or irritability evident," she had been able to consistently cooperate with treatment providers; and, that Dr. Ahmad's statement that plaintiff would be miss work 50% of the time was speculation (AR 407, 439-40).

Accordingly, because the ALJ did not find these limitations opined by Dr. Ahmad to be credible, he was not bound to accept the VE's testimony based upon the limitations. *See Stanley*, 39 F.3d at 118; *Blacha*, 927 F.2d at 231. The ALJ could properly discount Dr. Ahmad's opinions regarding the extent of plaintiff's mental limitations. *See Wilson*, 378 F.3d at 545. This was within his province.

## IV. Recommendation

For these reasons, I respectfully recommend that the Commissioner's decision be affirmed.

Dated: November 10, 2010  /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).